# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF HAMPSHIRE, FRANKLIN, AND HAMPDEN, SEPTEMBER TERM 1853, AT NORTHAMPTON.

PRESENT:

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. GEORGE T. BIGELOW,
HON. BENJAMIN F. THOMAS, } JUSTICES.
HON. PLINY MERRICK,

---

## HOLYOKE BANK vs. CHARLES T. BURNHAM & another.

A holder of shares in a manufacturing company by an absolute certificate thereof, is liable for the debts of the company, under Rev. Sts. c. 38, § 16, in the same manner as any member, although he had agreed to retransfer said shares to his vendor upon the performance of certain conditions, and although the transfer was intended merely as collateral security.

A retransfer of shares of stock in a manufacturing company by B. to A., in pursuance of an agreement to do so, made contemporaneous with the original transfer by A. to B., terminates B.'s liability as a stockholder, under Rev. Sts. c. 38, § 16, for the debts of the company, although made for that very purpose.

Under Rev. Sts. c. 38, § 16, a member of a manufacturing company may be liable for the debts of the corporation contracted while he was a member, although he ceases to be such before the debts become payable ; but he is not liable for debts contracted before he became a member, if his membership expires before the debts become payable, and action brought.

THIS action was commenced August 30th, 1851, to recover the amount of five promissory notes, made by the agent of the Goodman Paper Manufacturing Company, a corporation organized by the laws of this commonwealth, and doing business at South Hadley; all discounted by the plaintiffs for the use of said company, of which Charles T. Burnham, one of the defendants, was a stockholder. The notes were as follows: One of $500, dated April 4th, 1851, at four months; one of $1,100, dated April 14th, 1851, at four months; one of $2,000, dated April 19th, 1851, at four months; one of $500, dated April 22d, 1851, at four months; and one of $1,000, dated June 23d, 1851, at two months; and the plaintiffs sought to charge said Burnham as a stockholder in said corporation, in pursuance of Rev. Sts. *c.* 38, §§ 16–22.

The corporation was defaulted in the court of common pleas, and the defendant Burnham, having removed the case to this court, under *St.* 1840, *c.* 87, § 3, filed several grounds of defence, most of which were raised and decided in favor of the plaintiffs in the case of *Holyoke Bank* v. *Goodman Paper Manufacturing Company*, 9 Cush. 576. Said Burnham also denied that he was ever a member of said company, or ever held any stock, and that if he did, it was merely as collateral, and that his membership ceased before the cause of action accrued or action brought.

At the trial, before *Dewey*, J. the plaintiffs offered in evidence the records and stock book of said corporation, and Josiah W. Goodman testified that he was for some time the clerk and treasurer of said company; and it appeared that under date of January 31st, 1851, in said stock book, was a certificate of eleven shares to Joseph Burnham, and that under date of April 12th, 1851, in said stock book was a certificate of eleven shares to said Charles T. Burnham, as follows: "$1,100. South Hadley, April 12th, 1851. Be it known that Charles T. Burnham of South Hadley, is proprietor of eleven shares in the capital stock of the Goodman Paper Manufacturing Company, subject to their by-laws. The shares being transferable by the clerk on the company's books

on producing this certificate. J. W. Goodman, Clerk." Written across the foregoing was these words : " July 16th, 1851. This certificate is cancelled and shares transferred to Joseph Burnham. E. Wheelock, Clerk."

The defendant contended that he held said shares as collateral security merely, and the following agreement was produced and relied upon to prove such fact, namely : " Whereas Joseph Burnham has this day transferred to Charles T. Burnham, eleven shares of the stock of the Goodman Paper Manufacturing Company, for which the said Charles T. Burnham has this day given the said Joseph his note for $800, payable on demand : Now it is mutually agreed by and between the said parties, that if the said Joseph shall at any time within two years from date hereof, request a retransfer of said eleven shares of said stock, the said Charles shall retransfer the same to him by his giving up to said Charles his said note. And if at any time within said two years the said Charles shall request to make such retransfer of said shares of said stock, and take up his said note upon making such retransfer, and giving notice thereof to said Joseph, he the said Charles shall be entitled to have his said note of $800, and be wholly absolved and discharged from the payment thereof. If either party shall refuse to fulfil the above agreement, the other being ready and offering to fulfil it on his part, the delinquent party shall pay to the other as liquidated damages the sum of $500. Witness our hands this day April 12th, 1851. Joseph Burnham, Charles T. Burnham. Attest, Wm. D. Webb." This indorsement was upon the back ; " It is hereby further understood that the within-named C. T. Burnham is not accountable for any depreciation in value of the eleven shares, or any debts or assessments that may be made thereon ; but is to pay over to the within-named J. Burnham all the dividends or money he may receive from the eleven shares. Joseph Burnham, Charles T. Burnham. Attest, Wm. D. Webb." Then followed this clause, " South Hadley, July 16th, 1851. This may certify that I, Charles T. Burnham, have received of Joseph Burnham, the within-mentioned note of eight hundred dollars. The stock

16 *

being cancelled this day as per the within agreement. C. T Burnham."

Under date of July 16th, 1851, there was in said stock book a certificate of eleven shares to Joseph Burnham, as follows : " $1,000. South Hadley, July 16th, 1851. Be it known that Joseph Burnham, of Williamsburgh, New York, is proprietor of eleven shares in the capital stock of the Goodman Paper Manufacturing Company, subject to their by-laws. The shares being transferable by the clerk on the company's books on producing this certificate. Emory Wheelock, clerk of company." Across the above was written : " Transferred to William D. Webb, and cancelled July 18th, 1851. E. Wheelock, clerk."

It was admitted by the defendant Burnham, that the corporation had not complied with the provisions of the Rev. Sts. *c.* 38, §§ 16–22, and that the transfers of the shares from Charles T. Burnham to Joseph Burnham, and from said Joseph to William D. Webb, were made for the purpose of avoiding any liability as a member of said company.

Upon these facts, and others not material to be reported, it was agreed that such judgment might be entered as the law requires. The case was argued and determined at the September term, 1852.

*C. P. Huntington,* for the plaintiffs.

*W. Bowdoin,* for the defendant Burnham.

DEWEY, J. Many of the questions raised in this case were fully considered by us, and settled in the case of *Holyoke Bank* v. *Goodman Paper Manufacturing Company & others,* 9 Cush. 576. The questions remaining, and peculiar to this case are ; 1. What was the character of the ownership of the eleven shares of the stock of the Goodman Paper Manufacturing Company held by the defendant Charles T. Burnham ? 2. What was the effect of the retransfer of the same by the defendant to Joseph Burnham on the 16th July, 1851 ? 3. Whether members of a manufacturing corporation are by Rev. Sts. *c.* 38, § 16, liable for debts contracted before they became members, and which become due and payable at a period after they have ceased to be members ?

As to the first question, it seems to us quite clear that as regards the creditors of the corporation, the defendant is to be considered as an absolute owner of the eleven shares of stock standing in his name. Such is the form of the certificate he received, and such the relation he assumed to the other stockholders and to the public. Assuming this relation, he takes with it all the liabilities attached thereto. The private arrangement between the defendant and Joseph Burnham does not change the character of the ownership, so long as the stock remained in the name and under the legal control of the defendant, however it might qualify or justify a retransfer at any period when deemed for the interest of the defendant. If it had been the purpose to transfer the stock to the defendant merely as collateral, and to have exonerated the defendant from any liability beyond that of holding the shares as collateral security, the form of transfer should have corresponded with the provisions of *St.* 1838, *c.* 98, § 3.

As to the second question, the right of the defendant to retransfer to Joseph Burnham the eleven shares at any time, and thus devest himself of subsequent liability arising from his holding stock, the contract between these parties made at the time of the transfer, authorizing such retransfer at the election of the parties at any time within two years, becomes material, and we are of opinion that under such agreement made at the time of the first transfer, and the retransfer being only an act in execution of it, it is not obnoxious to the charge of having been done in fraud of creditors, although its leading object and purpose might have been on the part of the defendant to avoid liability as a member of said corporation. Having received these shares from Joseph Burnham, who was at the time of the transfer to the defendant the person liable as a member thereon, and having, in pursuance of an original condition in the agreement of sale, restored the ownership of the shares to his vendor, we think he was discharged from all new liabilities arising after the retransfer on 16th July, 1851. It is unnecessary to consider, therefore, the general question, how far persons owning shares in a manufacturing company may, by transferring them to some third person with a view to avoid

liability as such owner to the creditors, effectually do so, in the absence of such original contract for a retransfer. The effect of the conveyance of these eleven shares by the defend- ant to Joseph Burnham on the 16th July, was, therefore, such as to devest him of all new accruing liability after that date. It leaves him liable as a member of the company from the 12th April to the 16th July, 1851.

The further inquiry is, what is that liability in reference to the debts due to the plaintiffs from the Goodman Paper Manu- facturing Company ?   The five notes sought to be recovered of the defendant, as an individual member, were, with one excep- tion, given during the period he was a member, but none of them were due or payable until a period subsequent to his ceasing to be a member.   One of the notes, for the sum of $500, was given April 4th, 1851, payable four months after date.   The date of the writ in the present case is August 30th, 1851.

In regard to all these notes, therefore, no liability attaches to the defendant on the ground that he was a member of the corporation at the time the notes were payable, or that he was a member when the suit was brought, and so included in the general provision, making members liable.   The ground of liability as to the four notes given after the 12th April is, solely, that he was a member at the time the debts were con- tracted.   This fact being found, the defendant is chargeable as to these notes, under the statute, upon his individual liabil- ity ; no certificate having been filed as to the payment of the capital, or any annual statement published of the debts and liabilities of the company, agreeable to the provisions of Rev. Sts. *c.* 38, §§ 16–22.

The question is upon the construction of the 16th section, and who are included in the terms " all the members of every manufacturing company." That the statute embraces all per- sons who are members at the time when the liability is to be enforced, was settled by the case of *Curtis* v. *Harlow,* 12 Met. 5.   It also embraces all persons who were members of the company at the time of contracting the debt.   Such seems to have been the construction of similar provisions in *St.*

1829, c. 53, § 6. *Mill Dam Foundery* v. *Hovey*, 21 Pick. 454 To the extent of charging the defendant for debts contracted during the period of his membership, the plaintiffs may enforce their claim against the defendant as a member of the corporation.

As to the note given on April 4th, 1851, a further question arises. This debt was contracted before the defendant became a member of the corporation, and was not payable until after the period when he ceased to be a member. Neither the cases above cited, nor any decisions of this court, so far as we know, presented the question upon a state of facts like those occurring in the present case. Upon consideration as to the proper construction of the statute, the court are of opinion, that as the defendant was not a member of the corporation at the time this note was given, or when it became by its terms due and payable, nor at the time of the institution of this suit, he was not in that relation to this note that will subject him to a personal liability thereon under the statute.

The result is, that the defendant is liable to be charged as a member of the corporation upon the remaining four notes, and is not chargeable with the note of April 4th, 1851.